**UNITED STATES of America ex rel. Charles R. CHASE, Petitioner,**

**v.**

**A. T. RUNDLE, Superintendent, State Correctional Institution at Graterford, Pennsylvania, Respondent.**

**No. 848.**

United States District Court
M. D. Pennsylvania.

April 13, 1967.

Charles R. Chase, pro se.

LeRoy S. Zimmerman, Dist. Atty. of Dauphin County, Harrisburg, Pa., for respondent.

## MEMORANDUM

FOLLMER, District Judge.

Charles R. Chase, a prisoner at the State Correctional Institution, Graterford, Pennsylvania, filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania. Pursuant to 28 U.S.C. § 2241(d) the action was transferred to this district, because petitioner was originally sentenced in Dauphin County, which county is within the Middle District of Pennsylvania. The grounds on which petitioner bases his allegation that he is being held in custody unlawfully are as follows: (1) He was not allowed to consult with counsel during interrogation and was threatened into making a statement; (2) His prior criminal record was entered into evidence at his trial; (3) The trial court misquoted his evidence in its charge; (4)

The prosecution failed to produce evidence of matters he stated to the jury; and (5) He was coerced into making a statement by an attorney who was representing his deceased wife in a divorce action. Petitioner was convicted by a jury of murder in the first degree on January 22, 1958, and was sentenced to life imprisonment.

Petitioner filed a petition for writ of habeas corpus in the Court of Common Pleas of Dauphin County, Pennsylvania, on the same grounds raised herein. That petition was denied by Order dated September 27, 1965. Commonwealth ex rel. Chase v. Myers, 84 Dauph. 198 (1965). The Pennsylvania Supreme Court affirmed the denial of the petition on September 27, 1966, in a per curiam opinion. Thus petitioner has exhausted his available state remedies.

In the instant case, Rule to Show Cause was granted, Answers were received from the respondent and the District Attorney of Dauphin County, and this Court has had the benefit of the records of the original criminal proceedings and the state habeas corpus proceedings.

■ The petitioner first claims that he was denied the right to consult with an attorney before he was interrogated. This contention, standing alone, is not sufficient. The rules laid down in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), have been held not to apply retroactively. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed. 2d 882 (1966). Thus, this argument is not sufficient to render any confession taken as inadmissible in that the trial and sentencing occurred in 1958.

■ Petitioner also claims he was told: "that he was not seeing any-one (sic) until he gave a statement and if he did not try to help himself he would get the 'electric chair.'" (Petition, p. 4). An examination of the record shows that the confession was admitted in evidence not only without objection, but with express agreement of petitioner's counsel.

(N.T. p. 472). Also, it should be noted, that when the statement was first marked for identification, the Court granted a twenty minute recess to allow petitioner's counsel time to examine it. (N.T. p. 458). In fact, the statement was used by petitioner's counsel, in cross-examining one of the prosecution's witnesses, prior to the time the statement was admitted. (N.T. p. 469). Moreover, at the beginning of the statement, petitioner stated that no promises or threats had been made, that he understood that the statement could be used against him and that it was being made voluntarily and of his own free will. (N.T. p. 474). The voluntariness of the statement was again affirmed at the end of the statement. (N.T. p. 491). Finally, petitioner testified as to the very same facts related in the now contested statement when he took the stand. The record completely controverts petitioner's allegation. Moreover, if there is a grain of truth in petitioner's allegation it clearly appears from the above facts, that *any failure to object was trial tactics*, knowingly pursued by petitioner and his counsel, and that petitioner has waived any rights he may have had.

The second ground raised by petitioner relates to the introduction of a prior conviction for attempted burglary. After the defendant took the stand, the Commonwealth, in rebuttal, introduced the testimony of two additional witnesses. Upon the request of defendant's counsel, the Commonwealth stated that: "The purpose of the rebuttal by the Commonwealth at this time is to attack the defendant's credibility." (N.T. p. 628). The witnesses then stated the defendant had been convicted of attempted burglary.

■ Testimony as to prior convictions may be introduced as affecting the credibility of a defendant as a witness. Smith v. United States, 358 F.2d 683, 684 (3d Cir. 1966); Commonwealth v. Butler, 405 Pa. 36, 46–47, 173 A.2d 468 (1961), cert. denied, 368 U.S. 945, 82 S.Ct. 384, 7 L.Ed.2d 341 (1961). The Commonwealth stated that the testimony

was introduced only for such impeachment purposes.

It would appear that this would end the matter. However, the trial court failed to charge the jury as to the limited purpose for which the testimony of the prior conviction was introduced, after such a request by the Commonwealth. (N.T. pp. 701, 703–704). However, the record shows that shortly after the jury retired the defendant's attorneys, the Assistant District Attorney and the trial judge met in chambers. The court offered to recall the jury for further limiting instructions as to the testimony of the prior conviction as previously requested by the Commonwealth. At this point, the following was stated:

"MR. LOCK: [First Assistant District Attorney] I make no request that the Jury be returned for further instruction as per my previous request before the retirement of the jury on the point mentioned by the Court.

THE COURT: Mr. Cooper, do you desire the Jury to be recalled for further instruction on the point mentioned by the Court?

MR. COOPER: [Attorney for defendant] It is not the desire of counsel for the defendant to have the Jury recalled at this time for further instruction in accordance with Mr. Lock's previous request at the close of His Honor's Charge.

MR. CALDWELL: [Attorney for defendant] I concur with Mr. Cooper that the Jury be not recalled for further instruction." (N.T. pp. 722–723).

■■ An allegation of impropriety in the charge to the jury entitles a state prisoner to federal habeas corpus relief only where it is shown that it constituted fundamental error resulting in a deprivation of due process. McKinney v. Boles, 254 F.Supp. 433, 438–439 (N.D. W.Va.1966). It is apparent that the trial court realized that limiting instructions would have been proper under the circumstances. But, when the court offered to give such limiting instructions, both of petitioner's attorneys declined the opportunity.[1] Under these circumstances, it is clear that the petitioner has waived any objections he may have had in this regard. It appears that petitioner is grasping for straws in this regard. He is now, some nine years later, trying to take advantage of a situation which could easily have been cured at the time of trial. This is unimpressive. Such tactics will not be allowed to succeed. The petitioner clearly waived his right to have the court charge the jury as to the limited purpose of the Commonwealth's rebuttal evidence concerning his prior conviction.

■ The third ground raised by petitioner is that the trial court misquoted his evidence in its charge. This conclusory allegation is also meritless. The trial court carefully instructed the jury, inter alia, that it was the jury's recollection of the facts that controlled (N.T. pp. 647–648); that if evidence was not commented on it did not take away from its importance (N.T. pp. 667, 702); and that the jury should not get the impression that the Court had any opinion as to guilt or innocence. (N.T. p. 703). See United States ex rel. O'Halloran v. Myers, 248 F.Supp. 280 (E.D.Pa.1965).

The fourth ground raised by petitioner relates to an allegation that the District Attorney in his opening remarks said to the jury that he would prove that the defendant literally flew up the steps, several at a time, and at his heels Carrie Chase came in; that Carrie asked where her brother was and Carrie said, "Oh, my God, he is going to kill her." (N.T. pp. 492, 720). It is further alleged that there was no testimony as to these facts and thus the remarks by the prosecutor were so prejudicial as to deny the petitioner due process of law. It should be noted in this regard that when Shirley Baylor was placed on the stand by the Commonwealth, the defendant's attorney requested an offer of proof. (N.T. p.

---

1. It should be noted again that it was the Commonwealth, not the defense, that made the original request on this matter.

392). The Commonwealth, at side bar, stated it offered to prove by this witness, inter alia: "[T]he defendant came into the house, asked her [witness] where his wife was. She stated, 'Upstairs taking a bath.' Whereupon, the defendant literally leaped up the steps, skipping many steps as he went up. Mrs. Baylor went to the foot of the steps, and just about at that time Carrie Chase, the sister of the defendant, came in and asked where her brother was. Mrs. Baylor said he was upstairs, and Carrie Chase then said, 'Oh, my God, he is going to hurt her,' or 'kill her' or something like that." (N.T. p. 393). After objection, the Commonwealth agreed to eliminate Carrie Chase's utterance from the offer. (N.T. p. 394). The witness, Shirley Baylor, subsequently testified that the defendant did "run up the steps" to where his wife was taking a bath. (N.T. p. 396). Thus there was testimony as to the alleged fact that defendant ran up the stairs, although there appears to be no testimony as to the utterance by Carrie Chase.

■ It has been stated that an allegation that the prosecuting attorney used improper and prejudicial language in his address to the jury is not a question which can be raised by habeas corpus. Setser v. Welch, 159 F.2d 703 (4th Cir. 1947), cert. denied, 331 U.S. 840, 67 S.Ct. 1510, 91 L.Ed. 1851 (1947). It would appear that a better rule would be that absent substantial prejudice the remarks of a prosecuting attorney in his opening statement cannot be raised by habeas corpus.

In relation to the failure of the prosecuting attorney to prove remarks made in his opening statement, it has been said:

"As a general rule, courts recognize the fact that proof frequently fails to come up to expectations, and so the tendency is to permit a prosecuting attorney a reasonable latitude in stating to the jury the facts proposed to be shown. And where no substantial prejudice results, and there is nothing to show that the prosecuting attorney acted in bad faith, the appellate court will usually refuse to reverse or to remand for a new trial because of a reference by the prosecuting attorney to matters which he subsequently made no attempt to prove." Anno., 28 A.L.R.2d 972, 974.

Here, the prosecuting attorney, at the trial, stated he could not recall the remarks alleged to have been stated by him. (N.T. pp. 493, 719). But, even assuming that the prosecuting attorney did make the remarks, it is clear from the offer of what he expected to prove by the witness Shirley Baylor, that he fully intended to bring out what Carrie Chase allegedly stated. It was only when defendant's counsel objected to this that it was withdrawn. Thus we are not presented with the situation where there was no attempt to prove the alleged remarks, but where there was an abortive attempt to so prove them. This fact alone is sufficient, in the opinion of this Court, to change the situation completely.

■ Analogous to the claim made here is where it is alleged that a conviction resulted from perjured testimony. Absent proof that such perjury existed and that it was knowingly and intentionally used by the prosecution, one is not entitled to a writ of habeas corpus. United States ex rel. Helwig v. Maroney, 271 F.2d 329, 332 (3d Cir. 1959), cert. denied, 362 U.S. 954, 80 S.Ct. 870, 4 L.Ed. 2d 872 (1960) reh. denied, 362 U.S. 992, 80 S.Ct. 1080, 4 L.Ed.2d 1024 (1960); United States ex rel. Russell v. Cavell, 257 F.Supp. 204 (M.D.Pa.1966). It would appear then that where the prosecutor attempts to substantiate his opening statement, but such evidence is excluded over objection, that a writ of habeas corpus will not lie. This is a completely different situation from the one where the prosecutor makes strong allegations in his opening remarks and then makes no attempt to prove them. In the latter situation, the general rule of allowing leeway in opening statements has little or no application since there is

not even a colorable attempt to prove the original remarks.

Finally, the jury was instructed to base their decision on the testimony and that it was their recollection of the evidence that controlled. (N.T. pp. 647–648, 706). Under these circumstances, it is evident that there is no merit to the fourth ground raised by petitioner.

The substance of the fifth ground is that petitioner was harassed, intimidated and interrogated by the attorney who was representing petitioner's deceased wife in a divorce action. Thus, it is alleged, he was coerced into making a statement that was used against him. Again, it should be noted that when the defendant's statement was first marked for identification, the trial court granted a twenty minute recess at the request of defendant's counsel to allow them time to read it and discuss it with the defendant. (N.T. p. 458). When it was subsequently offered into evidence, it was specifically stated there was no objection thereto. (N.T. p. 472). The statement has been discussed more fully in relation to the first ground raised by petitioner. For the reasons stated above, it is obvious that there is no merit to the contention raised here.

Accordingly, the petition for writ of habeas corpus will be denied.